**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

KNOWLINGTON O. BURBAGE,    )
     )
    Plaintiff,    )
     )
v.    )    C.A. No. 04-133-SLR
     )
CITY OF WILMINGTON, MAYOR    )
JAMES BAKER, POLICE DEPARTMENT )
OF WILMINGTON, DELAWARE,    )
CHIEF MICHAEL SZCZERBA,    )
UNKNOWN SERGEANT,    )
OFFICER LEARY, OFFICER MYERS,    )
     )
    Defendants.    )

**DEFENDANTS CITY OF WILMINGTON, MAYOR JAMES BAKER, POLICE
DEPARTMENT OF WILMINGTON, CHIEF MICHAEL SZCZERBA AND
OFFICER JOSEPH LEARY OPENING BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

**AND**

**DEFENDANT JAMES MYERS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 4(m)**

Rosamaria Tassone, Esquire (I.D. #3546)
Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendants, City of Wilmington, Mayor James Baker, Police Department of Wilmington, Chief Michael Szczerba, Officer Joseph Leary and Officer James Myers

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW
       WITH REGARD TO PLAINTIFF'S §1983 ACTION BECAUSE THE RECORD IS
       DEVOID OF ANY EVIDENCE SUPPORTING PLAINTIFF'S ALLEGATION
       THAT THE ACTIONS OF DEFENDANTS MYERS AND LEARY VIOLATED
       PLAINTIFF'S CONSTITUTIONAL RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    DEFENDANTS MYERS AND LEARY ARE ENTITLED TO QUALIFIED
       IMMUNITY. THEREFORE, PLAINTIFF FAILS TO STATE A CLAIM UNDER 42
       U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER §1983 AGAINST
       DEFENDANTS CITY OF WILMINGTON, WILMINGTON POLICE
       DEPARTMENT, MAYOR JAMES BAKER AND CHIEF OF POLICE MICHAEL
       SCZCERBA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       A.     PLAINTIFF FAILS TO ADDUCE ANY EVIDENCE THAT THE CITY OF
              WILMINGTON HAS A "NEGLIGENT ARRESTING POLICY" WHICH
              PERMITS "SEXUAL ASSAULT" BY ITS POLICE OFFICERS . . . . . . . 19

       B.     THE WILMINGTON POLICE DEPARTMENT IS NOT A "PERSON"
              SUBJECT TO SUIT UNDER §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       C.     DEFENDANTS MAYOR JAMES BAKER AND CHIEF OF POLICE
              MICHAEL SZCZERBA CANNOT BE HELD LIABLE UNDER §1983
              SOLELY ON THE BASIS OF RESPONDEAT
              SUPERIOR LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.     THE COURT MUST DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO
        FEDERAL RULE OF CIVIL PROCEDURE 37 (B)(2) BECAUSE PLAINTIFF
        FAILED TO COMPLY WITH THE COURT'S ORDER COMPELLING
        DISCOVERY IN THIS MATTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

V.      PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(M), THE
        COURT MUST DISMISS ALL CLAIMS AGAINST DEFENDANT MYERS
        BECAUSE PLAINTIFF HAS FAILED TO SERVE DEFENDANT MYERS WITH
        THE SUMMONS AND COMPLAINT IN THIS MATTER. . . . . . . . . . . . . . . . 29

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

<u>**TABLE OF CITATIONS**</u>

**Cases**

<u>Acierno v. Cloutier</u>, 40 F.3d 597 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Adams v. Williams</u>, 407 U.S. 143 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 14

<u>Anderson v. Creighton</u>, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

<u>Arnold Pontiac-GMC, Inc. v. General Motors Corp.</u>, 786 F.2d 564 (3d Cir. 1986) . . . . . . . . . . 7

<u>Beckwith v. Sherwood</u>, 2001 U.S. Dist. LEXIS 24079 (D. Del October 11, 2001) . . . . . . . . . . 16

<u>Big Apple BMW, Inc., et.al v. BMW of North America, Inc., et. al</u>,
    974 F.2d 1358 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Board of the County Comm'rs v. Brown</u>, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Braxton v. U.S.</u>, 817 F.2d 238 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>Brown v. Pfaff</u>, 2004 U.S. Dist. LEXIS 3944 (D. Del. Mar. 3, 2004) . . . . . . . . . . . . . . . . . 20, 25

<u>Calloway v. Boro of Glassboro Dep't of Police</u>, 89 F. Supp. 2d 543 (D. N.J. 2000) . . . . . . 25, 26

<u>Carrigan v. State</u>, 957 F. Supp. 1376 (D. Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Carter v. City of Philadelphia</u>, 181 F.3d 339 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), *cert denied*, 484 U.S. 1066 (1988) . . . . . . . . . . 7

<u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>City of Canton v. Harris</u>, 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

<u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

<u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

<u>Cohen v. City of Philadelphia</u>, 736 F.2d 81 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Crawford v. Pennsylvania, 2003 U.S. Dist. LEXIS 16358 (M.D. Pa. Sept. 12, 2003) . . . . . . . . 24

Darby v. Pasadena Police Department, 939 F.2d 311 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . 22

Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fortt v. Carroll, 2005 U.S. Dist. LEXIS 4376 (D. Del. Mar. 17, 2005) . . . . . . . . . . . . . . . . 12, 13

Fraser v. Pennsylvania State System of Higher Education, et al.,
    1994 U.S. Dist. LEXIS 7409 (E.D. Pa. June 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Gaines v. University of Pennsylvania Police Department,
    1997 U.S. Dist. LEXIS 15460 (E.D. Pa. Oct. 6, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 24

Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . 7

Green v. Humphrey Elevator and Truck Co., 816 F.2d 877 (3d Cir. 1987) . . . . . . . . . . . . . . . 31

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hicks v. Feeney, 850 F.2d 152 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Hunter v. Bryant, 502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In Re City of Philadelphia Litig., 49 F.3d 945 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 18, 30

Izquierdo v. Sills, et. al., 68 F. Supp. 2d 392 (D.Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Jamison v. Wilmington Police Dep't, 2004 WL 2434298 (D. Del. Oct. 12, 2004) . . . . . . . 25, 26

Kentucky v. Graham, 473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Labo v. Borger, 2005 U.S. Dist. LEXIS 17176 (D.N.J. Aug. 15, 2005) . . . . . . . . . . . . . . . . . . 20

Lamb-Bowman v. Delaware State Univ., 152 F.Supp.2d 553 (D. Del. 2001) . . . . . . . . . . . . . . . 8

Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986) . . . . . . . . 7

Minnesota v. Dickerson, 508 U.S. 366 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Mitchell v. Forsyth, 472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Monell v. Department of Social Services, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . 19, 26

Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080 (3d Cir. 1988) . . . . . . . 30

Ornelas v. U.S., 116 S. Ct. 1657(1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Owens v. County of Delaware, 1996 U.S. Dist. LEXIS 12098 (E.D. Pa. Aug. 16, 1996)  9, 11, 13

Padilla v. Township of Cherry Hill, 2004 U.S. App. LEXIS 20763 (3rd Cir. Oct. 5, 2004)  . 24, 25

Paredes v. The City of Odessa, 128 F. Supp. 2d 1009 (W.D. Tex. 2000) . . . . . . . . . . . . . . . . . 22

PBA Local No. 38  v. The Woodbridge Police Department,
       832 F. Supp. 808 (D. N.J. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Peirson v. Ray, 386 U.S. 547 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984) . . . . . . . . . . . . . . . 28

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Rogers v. Powell, 120 F.3d 446 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Samuels v. Hall, 2004 U.S. Dist. LEXIS 14956 (D.Del. July 19, 2004) . . . . . . . . . . . . . . . . . . 18

Sanders v. Workman, 2001 U.S. Dist. LEXIS 9053 (D. Del. March 26, 2001) . . . . . . . . . . . . 18

Saucier v. Katz, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Siegert v. Gilley, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Smith-Berch, Inc. v. Baltimore County, 68 F.Supp. 2d 602 (D. Md. 1999) . . . . . . . . . . . . . . . 24

Stranahan Gear Co., Inc. v. NL Industries, Inc., 800 F.2d 53 (3d Cir. 1986) . . . . . . . . . . . . . 30

Thomas v. City of Philadelphia, 2002 U.S. Dist. LEXIS 12264 (E.D. Pa. Feb. 7, 2002) . . . . . 24

Thomas v. Wilmington Police Department,1994 Del. Super. LEXIS 266 ( Del. Super. 1994)    23

Terry v. Ohio, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 13

U.S. v. Arvizu, 534 U.S. 266 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. v. Bonner, 363 F.3d 213 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. v. Rickus, 737 F.2d 360 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

U.S. v. Sokolow, 490 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. v. Yamba, 407 F. Supp. 703 (W.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Washington v. Wilmington Police Department,
        1995 Del. Super. LEXIS 472 (Del. Super. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Wayne v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 8

Weirs v. Barnes, 925 F. Supp. 1079 (D. Del. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Zombro v. Baltimore City Police Department, 868 F.2d 1364 (4th Cir. 1989) . . . . . . . . . . . . 24

**Statutes**

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1 Wilm. Ch. §3-100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Rules**

Fed. R. Civ. P. 4(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 30

Fed. R. Civ. P. 17(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 37 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Fed. R. Civ. P. 37 (b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 28

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Other Sources**

3 Eugene McQuillan, the Law of Municipal Corporations §12.40 (1990) . . . . . . . . . . . . . . . 23

## <u>NATURE AND STAGE OF PROCEEDINGS</u>

On March 2, 2004, Plaintiff filed a Complaint in this Court pursuant to 42 U.S. C. §1983 alleging that his rights under the 4th, 8th and 14th Amendments to the United States Constitution were violated when Defendant Police Officers James Myers and Joseph Leary seized him and "grossly" searched Plaintiff's genitals without probable cause. Plaintiff alleges that: 1) "he was seized without probable cause;" 2) "he was physically and verbally abused by initial contact;" and 3) "he was sexually assaulted from the more intrusive and humiliating genital search." Plaintiff alleges that the actions of Defendants Myers and Leary constituted an illegal search and seizure, a violation of his due process rights, and cruel and unusual punishment. Plaintiff alleges that Defendant Unknown Sergeant is also liable for Plaintiff's alleged constitutional injury because "he knowingly neglected to exercise 'Superior Rank' over rogue officers." Plaintiff also alleges that City of Wilmington and the Wilmington Police Department "had a negligent arresting policy for it's (sic) police officers, that caused plaintiff's Constitutional Injury, by Sexual Assault," and that it "had a policy in place of sending out it's 'Police Officers,' which had a lack of: Training, Diversity, Sensitivity, and did not have an Adequate Suspicion to stop citizens (plaintiff), which in turn developed into a 'State-Created-Danger,' that resulted in plaintiff's injury." Lastly, Plaintiff alleges that Defendants Mayor James Baker and Chief of Police Michael Szczerba are liable for the alleged constitutional injuries based upon the concept of respondeat superior liability.

Discovery in this matter concluded on January 15, 2006. The following is Defendants Leary, the City of Wilmington, the Wilmington Police Department, Mayor James Baker and Chief Michael Szczerba's Opening Brief in support of their Motion for Summary Judgment, together with Defendant Myers' Motion to Dismiss pursuant to Fed. R. Civ. P. 4(m).

## SUMMARY OF ARGUMENTS

Defendants are entitled to judgment as a matter of law with regard to Plaintiff's §1983 action because the record is devoid of any evidence supporting Plaintiff's allegation that the actions of Defendants Myers and Leary violated Plaintiff's constitutional rights or that Defendant Myers "sexually assaulted" Plaintiff.  Defendants possessed reasonable, articulable suspicion to stop Plaintiff based upon the following facts: 1) the confidential informant, who was known to them personally, provided them with information that Plaintiff was his supplier of crack cocaine; 2) the confidential informant indicated that Plaintiff would be delivering a quarter ounce of crack cocaine to an unknown black male on June 21, 2002; 3) the confidential informant indicated that Plaintiff frequented the Cumberland Farms located on Miller Road; 4) the confidential informant described Plaintiff as a black male driving a red Plymouth Voyager bearing Delaware registration PC 47820; 5) the confidential informant advised that Plaintiff kept the crack cocaine on his person; 6) the confidential informant positively identified Plaintiff when Plaintiff entered the Cumberland Farms parking lot; and 7) through independent surveillance, Officer Chorlton identified Plaintiff's van pulling into the Cumberland Farms parking lot.  Further, Defendant Myers, acting pursuant to a lawful stop and frisk, felt the crack cocaine in Plaintiff's pants.  In accordance with the "plain touch doctrine," Defendant Myers had probable cause to reach into Plaintiff's pants and retrieve the contraband.  As such, the actions of Defendants Myers and Leary do not constitute a violation of Plaintiff's constitutional rights.  Further, Defendants Myers and Leary are entitled to qualified immunity.  Therefore, Plaintiff fails to state a claim under 42 U.S.C. §1983.

Plaintiff fails to state a claim under §1983 against Defendants City of Wilmington, Wilmington Police Department, Mayor James Baker and Chief of Police Michael Sczcerba.  First,

Plaintiff fails to adduce any evidence that the City of Wilmington has a "negligent arresting policy" which permits "sexual assault" by its police officers. Therefore, Plaintiff cannot establish municipal liability under §1983. Second, the Wilmington Police Department is not a "person" subject to suit under §1983. Third, Defendants Mayor James Baker and Chief of Police Michael Szczerba cannot be held liable under §1983 solely on the basis of respondeat superior liability.

Further, the Court must dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 37 (b)(2) because Plaintiff failed to comply with the Court's Order issued September 13, 2005 compelling Plaintiff to respond to Defendants' outstanding discovery in this matter.

Lastly, pursuant to Federal Rule of Civil Procedure 4(m), the Court must dismiss all claims against Defendant Myers because Plaintiff has failed to serve Defendant Myers with the summons and Complaint in this matter.

## STATEMENT OF FACTS

On June 21, 2002, Defendant Officers James Myers[1] and Joseph Leary were contacted by a confidential informant who they had previously arrested on drug related charges. The confidential informant indicated to Defendants Myers and Leary that he would be willing to identify his supplier of crack cocaine. The informant then advised them that a drug transaction involving the suspect would be occurring on June 21, 2002. (A 2- 4).

During the course of their conversation, the confidential informant stated that the suspect would be delivering a quarter ounce of crack cocaine to an unknown black male. The informant advised the Defendants that when he purchased drugs from the suspect, the suspect kept the drugs on his person. The informant advised the Defendants that the suspect was known to frequent the Cumberland Farms convenience store located on Miller Road. The informant then described the suspect as a black male driving a red Plymouth Voyager bearing Delaware registration PC 47820. (The suspect was later determined to be Plaintiff Knowlington Burbage). (A 2-4). Based upon the information provided by their confidential informant, Defendants Myers and Leary decided to put in place an operation in order to apprehend Plaintiff.

Following the conversation with the confidential informant, Defendants Myers and Leary met with Officer Robert Curry, a senior officer with several years of experience in the Drug, Organized Crime and Vice Unit, and his partner, Officer David Chorlton[2], to determine the best location for the operation. It was determined that the parking lot at the Cumberland Farms would be ideal because

---

[1] At the time Plaintiff filed his Complaint, Officer James Myers was no longer an employee of the City of Wilmington.

[2] At the time Plaintiff filed his Complaint, Officer David Chorlton was no longer an employee of the City of Wilmington.

once Plaintiff parked his vehicle, the officers would be better able to confine him, thereby reducing the risk that Plaintiff could flee the scene in his vehicle. Further, according to the confidential informant, the drug transaction would be occurring between 10:30 am and 11:30 am, a time when there was less pedestrian and vehicular activity at the Cumberland Farms. (A 3-10).

Defendants Myers and Leary met with Officers Curry and Chorlton at a pre-arranged location shortly before 10:30 a.m. Officer Chorlton took up a position in a secured location where he could surveil the Cumberland Farms parking lot with binoculars. Officer Curry was in a marked police vehicle across from the parking lot. Defendants Myers and Leary were also in a marked police vehicle across from the parking lot. The informant was parked in a vehicle in the parking lot. The informant had a cellular phone in his possession in order to contact Defendants Leary and Myers when he could positively identify the Plaintiff. (A 2-10).

At approximately 11:00 am, Officer Chorlton advised that he observed Plaintiff's van pulling into the parking lot. The informant also advised that the individual in the van was the suspect, Plaintiff. Plaintiff then exited his vehicle and walked toward the convenience store. (A 2-10).

Upon receiving confirmation that Plaintiff was the target suspect, Defendant Leary drove his vehicle into the parking lot and pulled up along the driver's side of Plaintiff's vehicle. Officer Curry pulled up behind Plaintiff's vehicle. Defendant Myers then exited the police vehicle and asked Plaintiff to stop and approach him. For police officer safety, Defendant Myers conducted a quick pat down of Plaintiff's exterior clothing. Feeling a bulge in the groin area of Plaintiff's pants consistent with the contraband the confidential informant advised would be located on Plaintiff's person, Defendant Myers pulled the waistband of Plaintiff's pants from the front of his body, reached his hand inside Plaintiff's waistband and quickly pulled his hand out, retrieving the crack cocaine

hidden in Plaintiff's pants.  The contraband was contained in a plastic bag.  Plaintiff also had $421.00 in his front left pant pocket.  (A 2-10).  The drugs were later tested and the results were positive for crack cocaine.  Plaintiff also later admitted that he was at the Cumberland Farms for purposes of selling the drugs.  (A 2).

Plaintiff was subsequently placed under arrest and charged with trafficking in cocaine and possession with intent to deliver a narcotic schedule II controlled substance.  (A 1).  According to Defendant Leary, the Delaware Attorney General's Office entered a nolle prosequi of the charges resulting from this arrest because Plaintiff was being charged federally with more serious drug related offenses and not because of any concerns with the arrest itself.  Defendant Leary believes the charges in this matter may have been adopted into Plaintiff's federal charges when he was arrested on drug related charges in another state.  (A 6).

# ARGUMENT

## STANDARD OF REVIEW

Summary judgment serves to "avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Fraser v. Pennsylvania State System of Higher Education, et al., 1994 U.S. Dist. LEXIS 7409, *8 (E.D. Pa. June 6, 1994), citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). The Court must grant summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), *cert denied*, 484 U.S. 1066 (1988), and Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986).

The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *See* Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, "[t]he moving party is not required to negate the non-movant's claim, but is only required to point out the lack of evidence supporting the non-movant's claim." Carrigan v. State, 957 F. Supp. 1376, 1381 (D. Del. 1997); *see also* Big Apple BMW, Inc., et.al v. BMW of North America, Inc., et. al, 974 F.2d 1358, 1362 (3d Cir. 1992).

Once the moving party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-moving party cannot produce "concrete evidence from which a reasonable [trier of fact] could return a verdict in [his] favor," then summary judgment for the movants must be granted. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "The mere existence of some evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." Lamb-Bowman v. Delaware State Univ., 152 F.Supp.2d 553, 557-558 (D. Del. 2001), citing Anderson, 477 U.S. at 249.

A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Wayne v. Borough of West Chester, 891 F.2d 458, 459 (3d Cir. 1989). Indeed, the non-movant must provide "significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 249. The moving party "may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987).

I.   **DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH REGARD TO PLAINTIFF'S §1983 ACTION BECAUSE THE RECORD IS DEVOID OF ANY EVIDENCE SUPPORTING PLAINTIFF'S ALLEGATION THAT THE ACTIONS OF DEFENDANTS MYERS AND LEARY VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

In his Complaint, Plaintiff alleges that his rights under the 4th, 8th and 14th Amendments to the United States Constitution were violated when Defendant Police Officers James Myers and Joseph Leary seized him and "grossly" searched Plaintiff's genitals without probable cause. (D.I. 2, p. 2 "Preliminary Statement"). Specifically, Plaintiff alleges that: 1) "he was seized without probable cause;" 2) "he was physically and verbally abused by initial contact;" and 3) "he was sexually assaulted from the more intrusive and humiliating genital search." (D.I. 2, ¶ 29). Plaintiff alleges that the actions of Defendants Myers and Leary constituted an illegal search and seizure, a violation

-8-

of his due process rights, and cruel and unusual punishment.  (D.I. 2, ¶¶ 28, 29).  Plaintiff further alleges that Defendant Unknown Sergeant is also liable for Plaintiff's alleged constitutional injury because "he knowingly neglected to exercise 'Superior Rank' over rogue officers."  (D.I. 2, ¶ 30).  Plaintiff's allegations are without merit and unsupported by any evidence of record.

Plaintiff's brings his claim pursuant to 42 U.S.C. §1983.   In order to state a claim under §1983, Plaintiff must establish two (2) essential elements: 1) the alleged conduct must have been committed by a person acting under color of state law; and 2) as a result of the conduct, Plaintiff must have been deprived of his or her rights, privileges or immunities secured by the Constitution or the laws of the United States.  Cohen v. City of Philadelphia, 736 F.2d 81, 83 (3d Cir. 1984).   In the present matter, Plaintiff's claim arises in the context of an investigatory stop or arrest.  As such, the allegations in Plaintiff's Complaint must be analyzed as violations of his 4th Amendment rights, and the "reasonableness" standard of the 4th Amendment is applicable.  Owens v. County of Delaware, 1996 U.S. Dist. LEXIS 12098, *26 (E.D. Pa. Aug. 16, 1996).

In Terry v. Ohio, 392 U.S. 1 (1968), the United States Supreme Court recognized that police officers have the right to stop and detain citizens for purposes of investigating possible criminal behavior even though the officer lacks probable cause to make an arrest.  Id. at 22; Adams v. Williams, 407 U.S. 143, 145 (1972).  In explaining its holding in Terry, the Court stated,

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.  On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. Adams, 407 U.S. at 146.

Under Terry, a police officer may conduct a brief, warrantless, investigatory stop based on a

reasonable and articulable suspicion that a person has committed, is committing, or is about to commit a crime, and the detention will not violate the federal constitution. <u>Terry</u>, 392 U.S. at 21; <u>U.S. v. Sokolow</u>, 490 U.S. 1, 7 (1989); <u>U.S. v. Rickus</u>, 737 F.2d 360, 365 (3d Cir. 1984). As such, Plaintiff's assertion that the Defendants required "probable cause" to stop him is erroneous as a matter of law. (D.I. 2, p.2 Preliminary Statement; ¶29) The Defendants needed only "reasonable articulable suspicion" that Plaintiff was committing or about to commit a crime. "Reasonable articulable suspicion" of criminal activity is defined as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." <u>Terry</u>, 392 U.S. at 21. The United States Supreme Court cautioned that precise nature of the legal standard of "reasonable suspicion," like "probable cause," is difficult to define.

> Articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible. They are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. As such, the standards are not readily, or even usefully, reduced to a neat set of legal rules... We have cautioned that these two legal principles are not finely-tuned standards, comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence. They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed. <u>Ornelas v. U.S.</u>, 116 S. Ct. 1657, 1661 (1996).

In evaluating whether the Defendants had reasonable articulable suspicion to justify the stop, courts must look to the totality of the circumstances surrounding the stop. <u>U.S. v. Bonner</u>, 363 F.3d 213, 217 (3d Cir. 2004). The totality of the circumstances "process allows officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." <u>U.S. v. Arvizu</u>, 534 U.S. 266, (2002); <u>Rickus</u>, 737 F.2d at 365 ("In determining whether a stop is justified,

the court must view the circumstances surrounding the stop in their entirety, giving due weight to the experience of the officers.")  This standard is an objective standard.  <u>Owens</u>, 1996 U.S. Dist. LEXIS 12098, at * 31.

Further, the <u>Terry</u> Court held that police officers conducting a reasonable investigatory stop should not be denied the opportunity to protect himself or herself from attack by the suspect. "'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons." <u>Adams</u>, 407 U.S. at 146, quoting <u>Terry</u>, 392 U.S. at 24; see also, <u>Rickus</u>, 737 F.2d at 365; <u>U.S. v. Yamba</u>, 407 F. Supp. 703, 710 (W.D. Pa. 2006).  As such, no constitutional injury occurs as a result of a "stop and frisk."

### **The Stop**

In the matter *sub judice*, the record consists solely of the Wilmington Police Department Initial Crime Report dated June 21, 2002, the affidavit of Defendant Leary and the affidavit of Officer Curry.  (A 1-10).  Plaintiff has not supported his allegations with any evidence other than pointing to the Initial Crime Report.  (A 12, 27).[3]  As such, the undisputed record in this matter reveals that when Defendants Myers and Leary approached Plaintiff, they had reasonable articulable suspicion to believe that Plaintiff was about to commit a crime, specifically, the sale of crack

---

[3] In Defendants' First Request for Production of Documents, Plaintiff was asked to provide "[c]opies of any and all writings which you intend to rely upon in any way at trial" and "[c]opies of all documents relied upon by Plaintiff to answer Defendants' First Set of Interrogatories Directed to Plaintiff."  (A 12).  In response, Plaintiff wrote "the officers written report" and "the officers written statement of the day of arrest," respectively.  (A 27).  Presumably, the latter refers to the written report as that is the only written statement made on the day of Plaintiff's arrest.  No other documents were provided or referenced, nor did Plaintiff answer Defendants' First Set of Interrogatories.

cocaine. Defendants' reasonable suspicions were based upon the following circumstances: 1) the confidential informant, who was known to them personally, provided them with information that Plaintiff was his supplier of crack cocaine; 2) the confidential informant indicated that Plaintiff would be delivering a quarter ounce of crack cocaine to an unknown black male on June 21, 2002; 3) the confidential informant indicated that Plaintiff frequented the Cumberland Farms located on Miller Road; 4) the confidential informant described Plaintiff as a black male driving a red Plymouth Voyager bearing Delaware registration PC 47820; 5) the confidential informant advised that Plaintiff kept the crack cocaine on his person; 6) the confidential informant positively identified Plaintiff when Plaintiff entered the Cumberland Farms parking lot; and 7) through independent surveillance, Officer Chorlton identified Plaintiff's van pulling into the Cumberland Farms parking lot. (A 1-10). See, Adams, 407 U.S. at 146 (held that officer's actions justified when he stopped plaintiff based upon information provided to him by a confidential informant when the informant was known to him personally and had provided him with information in the past; court specifically rejected argument that reasonable suspicion can only be based upon the officer's personal observation rather than information provided by another person); Fortt v. Carroll, 2005 U.S. Dist. LEXIS 4376, *21 (D. Del. Mar. 17, 2005)(held that under the totality of the circumstances the officers had reasonable and articulable suspicion to detain plaintiff because an informant's tip corroborated an anonymous tip received approximately two months prior and also provided the officers with predictive information that they corroborated with independent police surveillance). Given the undisputed facts and well-established case law, Defendants Myers and Leary had reasonable suspicion that Plaintiff was engaged in criminal activity, and the Defendants were justified in stopping Plaintiff to investigate a potential crime. Therefore, as a matter of law, the stop did not violate the 4th Amendment.

-12-

### The Pat Down Search and Seizure of Crack Cocaine

When Defendants Myers and Leary approached Plaintiff to conduct a brief investigatory stop, Defendant Myers was permitted by law to conduct a brief pat down search of Plaintiff's person for the purpose of officer safety.  Terry, 392 U.S. at 24; Fortt, 2005 U.S. Dist. LEXIS 4376, at *24 n. 5 (held that even if plaintiff had challenged either the search or the money found in plaintiff's pocket, "the information given by the anonymous caller and the CI gave police a reasonable suspicion that Fortt was a drug dealer and might be armed.  Thus, a search of Fortt's person to ensure officer safety was reasonable in this situation.") (A 2, 5, 9).  However, Plaintiff alleges that only Defendant Myers, who Plaintiff has failed to served with a summons and Complaint in this matter, conducted the pat down search.  Defendant Leary did not search Plaintiff, nor does Plaintiff allege that Defendant Leary searched him.  (A 1-10; D.I. 2, ¶¶ 14,16, 17, 18, 21).  As such, even if the search of Plaintiff was inappropriate, which it was not, Defendant Leary cannot be held liable under §1983 because he did not personally participate in the pat down or search of Plaintiff.  Owens, 1996 U.S. Dist. LEXIS 12098, at *56 (held that the officer "played no role in the search of plaintiff other than observing from outside the cell; his involvement cannot be said to rise to a level of culpability").

With regard to the actions of Defendant Myers, the Court must dismiss all claims against Defendant Myers because Plaintiff has failed to serve Defendant Myers with the Complaint and summons in this matter.  Therefore, Defendant Myers is not a party properly before this Court.  (See, Argument V).  Notwithstanding this fact, the actions of Defendant Myers in reaching into Plaintiff's pants to retrieve Plaintiff's stash of crack cocaine does not violate Plaintiff's 4th Amendment rights.

The United States Supreme Court in Minnesota v. Dickerson, 508 U.S. 366, (1993), addressed the specific issue of contraband discovered by officers during the execution of a Terry frisk.  The

Court held that an officer is acting within the bounds of the 4th Amendment if he seizes contraband discovered during an otherwise lawful pat down search of a suspect.

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context. Id. at 375.

The Court further stated such seizures of immediately apparent contraband are constitutionally permissible because they are supported by probable cause:

> Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures. Id. at 376.

In this instance, Defendant Myers had probable cause to reach into Plaintiff's clothing and retrieve the contraband which he felt during his pat down search of Plaintiff's outer clothing. Specifically, Defendant Myers had information from the confidential informant that when Plaintiff was engaged in selling drugs, Plaintiff kept the crack cocaine on his person. (A 4). Further, Defendant Myers actually felt the crack cocaine in the groin area of Plaintiff's pants. (A 2, 5). Therefore, Defendant Myers' actions do not reach the level of a constitutional violation. Adams, 407 U.S. at 148 (held that once the officer found the gun precisely where the informant had predicted, probable cause existed to arrest plaintiff).

Although Plaintiff contends that Defendant Myers "sexually assaulted" him by "forcefully squeez[ing] Plaintiff's testicles... and may have unintentionally grazed Plaintiff's anal cavity," Plaintiff has failed to adduce any evidence to support this allegation. Indeed, Defendant Leary and

-14-

Officer Curry both state that the search was completed in a matter of seconds, and that Defendant Myers conducted the search in a professional manner. Neither officer observed Defendant Myers groping or grabbing Plaintiff's testicles. Further, both officers state that Plaintiff made no complaints regarding Defendant Myers' actions. (A 5, 9). Given that Plaintiff has failed to adduce any evidence to support his allegations, these facts are undisputed.

Further, Plaintiff's allegation that Defendants Myers and Leary "sprang upon Plaintiff, guns drawn, with the Sergeant in close proximity" is completely unsupported by the record. Both Defendant Leary and Officer Curry state that no weapons were drawn during the entire encounter with Plaintiff. (A 5 -6, 9-10). Additionally, no sergeant was present on the scene when Plaintiff was stopped and searched. (A 5-6, 9-10).

Given the above, Plaintiff has adduced no factual evidence supporting his allegations that: 1) "he was seized without probable cause;" 2) "he was physically and verbally abused by initial contact;" and 3) "he was sexually assaulted from the more intrusive and humiliating genital search." (D.I. 2, ¶ 29). As such, Plaintiff fails to establish a constitutional injury necessary to succeed on a §1983 claim, and Defendants are entitled to judgment as a matter of law.

## II.    DEFENDANTS MYERS AND LEARY ARE ENTITLED TO QUALIFIED IMMUNITY. THEREFORE, PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. §1983.

To the extent that this Court does not dismiss Plaintiff's action against Defendant Myers, both Defendants Myers and Leary enjoy qualified immunity for the actions they undertook in connection with the investigatory stop of Plaintiff and subsequent search of his person. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The privilege is "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). Consequently, the United States Supreme Court has repeatedly stressed that immunity questions must be decided at the earliest possible stage of litigation. <u>Hunter v. Bryant</u>, 502 U.S. 224, 227(1991). Whether a governmental official is entitled to qualified immunity is often a legal question and "particularly amendable to resolution on summary judgment." <u>Beckwith</u>, 2001 U.S. Dist. LEXIS 24079 at *8, citing <u>Rogers v. Powell</u>, 120 F.3d 446 (3d Cir. 1997) and <u>Acierno v. Cloutier</u>, 40 F.3d 597 (3d Cir. 1994); *see also*, <u>Siegert v. Gilley</u>, 500 U.S. 226, 233 (1991). In the matter *sub judice*, the record supports a finding that the Defendants are entitled to immunity with respect to the investigatory stop of Plaintiff and subsequent search of his person. Therefore, Defendants are entitled to summary judgment as a matter of law.

In the context of determining whether qualified immunity applies, the Court must first consider the threshold question of whether Plaintiff has demonstrated the violation of an actual constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The constitutional issues in the present matter are whether Plaintiff's 4th, 8th, or 14th Amendment rights were violated by one or more of the Defendants. In order to carry his burden of proof and demonstrate an actual constitutional injury, Plaintiff must adduce evidence proving that Defendants did not have reasonable suspicion to stop him in the Cumberland Farms parking lot; that Defendant Myers did not feel the crack cocaine in the front of Plaintiff's pants; and that Defendant Myers sexually assaulted Plaintiff. However, the record is devoid of evidence substantiating any of Plaintiff's allegations. Rather, the evidence demonstrates that Defendants acted appropriately and in an objectively reasonable manner

at all times.  (See, Argument I, *supra*).  Therefore, the evidence does not reflect a violation of Plaintiff's constitutional rights, and Defendants are entitled to qualified immunity as a matter of law.

Notwithstanding the above, if the Court concludes that Plaintiff has demonstrated a constitutional violation, the Court must next address the second part of the qualified immunity analysis, whether the constitutional right at issue was clearly established.  Id.  This inquiry is essential and "must be undertaken in light of the specific context of the case, not as a broad general proposition;... it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  Id.  When a Court denies summary judgment any time a material issue of fact remains on the excessive force claim, it undermines the goal of qualified immunity, specifically, "to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment... If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgement based on qualified immunity is appropriate."  Id. at 282 (internal citations omitted).

A right is "'clearly established' when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Therefore, the relevant, dispositive inquiry in determining whether a right is "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.

Even if a Court finds that Defendant Myers and Leary acted inappropriately by stopping Plaintiff based upon reliable information from a confidential informant that Plaintiff was involved in a drug transaction, and Defendant Myers acted unreasonably in retrieving the crack cocaine from inside Plaintiff's pants when he felt the contraband during a protective pat down search, Defendants

-17-

are entitled to qualified immunity if reasonable officers in their position could conclude that the Defendants' actions were reasonable.  "If on an objective basis 'it is obvious that no reasonably competent officer would have concluded that [the actions were lawful],' defendants are not immune from suit; however, 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" Sanders v. Workman, 2001 U.S. Dist. LEXIS 9053, *10 (D. Del. March 26, 2001), citing In re City of Philadelphia Litig., 49 F.3d 945, 961-962 (3d Cir. 1995); Samuels v. Hall, 2004 U.S. Dist. LEXIS 14956, (D.Del. July 19, 2004).

In the matter *sub judice*, Plaintiff's constitutional rights were not clearly established such that Defendants would have understood that their actions violated the Constitution.   Given the circumstances confronting the Defendants, they could have reasonably believed that their conduct comported with clearly established law.  Indeed, Officer Curry indicated that the pat down search of Plaintiff's person for purposes of officer safety was "standard procedure."  (A 9).  Officer Curry also indicated that Defendant Myers "was very professional in the manner in which he conducted the pat down."  (A 9).  Most significantly, Officer Curry stated the following in his affidavit with regard to Plaintiff's arrest:

> Given my years of experience with the Drug Unit and the numerous times I participated in this type of street operation, it is my opinion that the execution of the arrest of Plaintiff was "textbook" and was done in a legally acceptable manner.  Both Officers Myers and Leary acted appropriately at all times.  (A 10).

This Court has opined that "police officers are accorded qualified immunity in order to promote the officers' interest in performing their duties without the fear of constantly defending themselves against insubstantial claims for damages." Weirs v. Barnes, 925 F. Supp. 1079,1086 (D. Del. 1996), citing Peirson v. Ray, 386 U.S. 547 (1967).  In light of the foregoing, Defendants are

entitled to qualified immunity from suit as a matter of law, and the Court must grant summary

judgment, dismissing Plaintiff's Complaint with prejudice.

**III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER §1983 AGAINST DEFENDANTS CITY OF WILMINGTON, WILMINGTON POLICE DEPARTMENT, MAYOR JAMES BAKER AND CHIEF OF POLICE MICHAEL SCZCERBA.**

**A.    Plaintiff fails to adduce any evidence that the City of Wilmington has a "negligent arresting policy" which permits "sexual assault" by its police officers.**

It is well established law that a municipality cannot be held liable for claims arising out of

§1983 under the theory of respondeat superior.  Monell v. Department of Social Services, 436 U.S.

658, 694 (1978).  The municipality, as an entity, can only be held liable under §1983 if the injury is

inflicted by a government's lawmaker or the execution of the government's policy or custom.  Id.;

see also City of St. Louis v. Praprotnik, 485 U.S. 112 (1988). The Monell Court defined a municipal

policy as "a statement, ordinance, regulation, or decision officially adopted and promulgated by [a

local governing] body's officers."  Id. at 690.  Likewise, the Court defined a municipal custom as

"such practices of state officials... [as are] so permanently and well settled as to constitute a 'custom

or usage' with the force of law."  Id. at 691.  Indeed, the United States Supreme Court has

"consistently refused to hold municipalities liable under a theory of respondeat superior" and,

therefore, courts must apply "rigorous standards of culpability and causation... to ensure that the

municipality is not held liable solely for the actions of its employee."  Board of the County Comm'rs

v. Brown, 520 U.S. 397, 403, 405 (1997).

A municipal policy sufficient to bind the government under §1983 may be demonstrated in

two ways.  First, where an employee acts pursuant to an official policy or edict of the municipality,

municipal liability may attach.  Izquierdo v. Sills, et. al., 68 F. Supp. 2d 392, 405 (D.Del. 1999); see

also Praprotnik, 485 U.S. at 123.  Secondly, a single act by a decision maker who possesses final authority to establish policy with respect to the action ordered may also constitute policy under §1983.  Id.  The determination of whether a particular official has "final policymaking authority" is a question of state law.  Id.

_____In order to hold a municipality liable for implementing a policy that is unconstitutional, the evidence must show that the municipality had constructive knowledge of the adoption of the unconstitutional policy.  Brown, 520 U.S. at  403.  In addition, Plaintiff must show that there is an "affirmative link" between the policy and the deprivation.  Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996).  Indeed, the policy must be the "moving force" behind the deprivation.  City of Canton v. Harris, 489 U.S. 378, 392 (1989).

A municipal custom may also be demonstrated in two ways.  First, Plaintiff must show that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled  and permanent as virtually to constitute law."  Izquierdo, 68 F. Supp. 2d at 405.  Secondly, Plaintiff must demonstrate " 'knowledge and acquiescence' by the final policymaker in the area." Id. at 406.

In the instant action, Plaintiff attempts to assert municipal liability by alleging that the City of Wilmington "had a negligent arresting policy for it's (sic) police officers, that caused plaintiff's Constitutional Injury, by Sexual Assault."  (D.I. 2, p.1; ¶3).  However, Plaintiff fails to point to any policy officially adopted by Defendant City which would permit or condone the deprivation of an individual's constitutional rights during an arrest.

Plaintiff also alleges that the City of Wilmington "had a policy in place of sending out it's 'Police Officers,' which had a lack of: Training, Diversity, Sensitivity, an did not have an Adequate

Suspicion to stop citizens (plaintiff), which in turn developed into a 'State-Created-Danger,' that resulted in plaintiff's injury." (D.I.. 2, ¶24). To the extent that Plaintiff is attempting to assert municipal liability on the basis that Defendant City failed to properly train Defendants Myers and Leary, Plaintiff's argument is without merit.

Section 1983 liability also exists when a municipality fails to train, instruct, counsel, supervise and discipline officers. City of Canton, 489 U.S. at 387; City of Oklahoma v. Tuttle, 471 U.S. 808 (1985). In order to assert liability under a "failure to train" claim, Plaintiff must prove that the municipality acted with "deliberate indifference to the rights of persons." Id. "Findings of deliberate indifference, as a matter of law, require that there be a history of unconstitutional behavior by municipal employees... [and] cannot be established based solely on one incident." Labo v. Borger, 2005 U.S. Dist. LEXIS 17176, *3-5 (D.N.J. Aug. 15, 2005). To demonstrate that a municipality's failure to train amounted to "deliberate indifference," Plaintiff must prove the following: 1) municipal policymakers know that employees will confront a particular situation; 2) the situation involves a difficult choice or a history of employee mishandling; and 3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999).

In the present matter, Plaintiff has failed to provide any evidence demonstrating a history of deliberate indifference on the part of Defendant City with regard to arrests made by its police officers. The only "evidence" Plaintiff asserts to support his claim are conclusory allegations that "many others of color, throughout the United States, have felt the pains of untrained officers, with licences to freely kill and/or present themselves above the law, as set forth in this complaint," and names two (2) individuals who were supposedly shot by police. (D.I. 2, ¶27). Such allegations are

-21-

insufficient as a matter of law to establish a history of deliberate indifference on the part of this

Defendant, the City of Wilmington, and, as such, liability cannot attach under §1983.

**B.     The Wilmington Police Department is not a "person" subject to suit under §1983.**

In his Complaint, Plaintiff asserts a claim against the Wilmington Police Department because

it "had a negligent training Policy for apprehending suspects that has a pattern of abuse... There is

a pattern of abuse by defendants 'Officers Leary and Myers.'" (D.I. 2, ¶ 35).  Notwithstanding the fact

that the record is devoid of any evidence necessary to establish such policy and pattern (See

Argument III, A; A-6), Defendant Wilmington Police Department is merely a department of the City

of Wilmington and has no separate existence of its own subjecting it to suit.  Therefore, Plaintiff

cannot maintain a cause of action against this particular Defendant, and Defendant Wilmington

Police Department is entitled to judgment as a matter of law on all claims.

The capacity of an entity such as a police department to sue or be sued is "determined by the

law of the state in which the district court is held."  Paredes v. The City of Odessa, 128 F. Supp. 2d

1009, 1013 (W.D. Tex. 2000), citing Fed. R. Civ. P. 17(b); Darby v. Pasadena Police Department,

939 F.2d 311, 313 (5th Cir. 1991)(dismissing Title VII suit against police department because

department was not a legal entity for purposes of a lawsuit).  In order for a plaintiff to be able to sue

a municipal department, the department must have a separate legal existence from the municipality.

Darby, 939 F.2d at 313.  "Unless the political entity that created the department has taken 'explicit

steps to grant the servient agency with jural authority,' the department lacks the capacity to sue or

be sued."  Paredes, 128 F.Supp. 2d at 1013, quoting Darby, 939 F.2d at 313.

Courts have cited the Law of Municipal Corporations as the rule on the issue of when a

department may be sued separately from the municipality.  The treatise states:

In the discharge of a duty primarily resting upon the municipality, generally the rule is that a department acts as its agent although the department may have full power in the particular matter involved. However, the department may be made responsible as a corporation, and not the city, where the charger or a legislative act may so provide. In that event liability for acts done or omitted by it is in its corporate capacity. Where the department, for example, a fire, police, health, education, overseers of the poor, and the like, is a corporation, or a quasi-corporation, with functions peculiar to such bodies which are performed separately from the functions of the municipality, these bodies are responsible as corporations and may sue and be sued as such. *But if the board or department is not a corporate body it cannot be sued as such,* e.g., a police board, a board of workhouse directors, a board of park commissioners, a housing authority, or a board of public works . . .

3 Eugene McQuillan, the Law of Municipal Corporations §12.40 (1990)

In <u>Thomas v. Wilmington Police Department</u>,1994 Del. Super. LEXIS 266 ( Del. Super. 1994) the Delaware Superior Court specifically utilized the rule set forth above to address the issue of whether the Wilmington Police Department is subject to suit. The Court found that based upon Wilmington City Charter Sec. 3-100, the Wilmington Police Department is merely a department of the City of Wilmington and cannot be sued. The Wilmington City Charter states in pertinent part:

Article III.    Executive and Administrative Branch – Organization
Chapter 1.    Officers, departments, boards, commissions and other agencies.
Sec. 3-100    Executive and administrative officers, departments, boards, commissions and agencies designated.
The executive and administrative work of the city shall be performed by...
(d)    The following departments which are hereby created... Police department...

In granting summary judgment in favor of Defendant Wilmington Police Department, the Court in <u>Thomas</u> concluded that "This section of the Wilmington Charter shows that the Wilmington Police Department 'is not a separate entity, but rather a department of the city itself.'" <u>Id.</u> This same conclusion was reached in <u>Washington v. Wilmington Police Department</u>, 1995 Del. Super. LEXIS 472 (Del. Super. 1995) (held that the Wilmington Police Department was not a separate juridical

-23-

entity subject to being sued by a plaintiff).

Based upon the well settled rule of law that police departments are not separate juridical entities from the municipalities themselves, the Third Circuit has recently held that unincorporated police departments are not legal entities amenable to suit. Padilla v. Township of Cherry Hill, 2004 U.S. App. LEXIS 20763 (3rd Cir. Oct. 5, 2004); accord, Thomas v. City of Philadelphia, 2002 U.S. Dist. LEXIS 12264 (E.D. Pa. Feb. 7, 2002)(held that the Philadelphia Police Department does not have a corporate existence separate from the city so as to permit suit); see also, Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992)(dismissing suit against county sheriff's department because "sheriff's departments and police departments are not usually considered legal entities subject to suit"). This position has found significant support in other jurisdictions. Federal courts have held that for purposes of civil rights statutes, a municipal police department is not subject to suit. See, Zombro v. Baltimore City Police Department, 868 F.2d 1364, 1371 (4th Cir. 1989) (dismissing claim because, inter alia, Baltimore police department not a "person" for purposes of section 1985); Crawford v. Pennsylvania, 2003 U.S. Dist. LEXIS 16358, at *11 (M.D. Pa. Sept. 12, 2003)("Although there is no precedential ruling on point, courts are in agreement that the definition of 'person' in section 1985 and 1986 is the same as that in section 1983"); Gaines v. University of Pennsylvania Police Department, 1997 U.S. Dist. LEXIS 15460, at *8 (E.D. Pa. Oct. 6, 1997) ("police departments are purely instrumentalities of the municipality with no separate identity"); PBA Local No. 38  v. The Woodbridge Police Department, 832 F. Supp. 808, 825-826 (D. N.J. 1993)(collecting cases); Smith-Berch, Inc. v. Baltimore County, 68 F. Supp. 2d 602, 626-627)(D. Md. 1999)(collecting cases).

Indeed, this Court has previously dismissed civil rights claims against the Wilmington Police Department for the reasons set forth above. Citing several opinions from circuit and district courts,

-24-

this Court concluded:

> A municipal police department, however, is not a 'person' within the meaning of Section 1983. Consequently, the Wilmington Police Department is entitled to summary judgment as a matter of law. Brown v. Pfaff, 2004 U.S. Dist. LEXIS 3944, at *7 (D. Del. Mar. 3, 2004).

There is some contrary authority in this district which this Defendant respectfully urges should not be followed; rather this Court should adhere to its holding in Brown v. Pfaff, *supra*. The same Court who held that the Wilmington Police Department is not a "person" for purposes of section 1983 in Brown seemed to reached the opposite conclusion in Jamison v. Wilmington Police Dep't, 2004 WL 2434298 (D. Del. Oct. 12, 2004), wherein it wrote:

> In the case at bar, the defendant police department is a local municipality and, therefore, a person subject to suit for a §1983 violation. However, due to the deficiency of the record it cannot be determined whether the alleged constitutional violation was the result of a governmental custom. (Id. At *3).

For the following reasons, Defendant respectfully suggests that the holding in Jamison is incorrect and the earlier holding in Brown v. Pfaff is correct. First, Jamison was decided only a week after the Third Circuit's holding in Padilla v. Township of Cherry Hill, supra (local police department not juridical entity and thus not a "person") and thus Padilla was not brought to the attention of this Court. Second, in Brown the Court considered five other cases holding that a municipal police department is not a "person" for section 1983. None of those authorities was expressly considered or mentioned in Jamison. Third, the Court in Jamison cited no authority for its proposition that the "police department is a local municipality." Indeed, this proposition is inconsistent with federal law. Fourth, the authority cited in Jamison does not stand for the proposition that a police department is a "person." In Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543, 558 (D. N.J.

-25-

2000) [4] the court found no evidence to support the claim that the police department deprived the plaintiff of her constitutional rights and granted summary judgment on that basis.  Thus, it never reached the issue as to whether the police department was a "person."

    **C.**    **Defendants Mayor James Baker and Chief of Police Michael Szczerba cannot be held liable under §1983 solely on the basis of respondeat superior liability.**

Plaintiff brings a cause of action under §1983 against Defendants Mayor James Baker and Chief of Police Michael Szczerba for the alleged constitutional injuries caused by Defendants Myers and Leary based solely upon the concept of respondeat superior liability.  (D.I. 2, ¶¶4,6,25,26,32,34). However, like municipalities, individuals such as the Mayor and the Chief of Police cannot be held liable under §1983 solely on a theory of respondeat superior.  <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985).  The Third Circuit Court of Appeals states:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).

Plaintiff does not allege any personal involvement, knowledge or acquiescence on the part of Defendants Baker and Szczerba with regard to his arrest on June 21, 2002.  Therefore, Plaintiff cannot maintain a cause of action against these Defendants.

Further, a §1983 action brought against an individual in his or her official capacity "generally represents only another way of pleading an action against an entity of which the officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.  "In an official-capacity action,... a governmental entity is liable under

---

[4]A typographical error in the <u>Jamison</u> opinion suggests that <u>Calloway</u> arose in this district; rather it was decided by the District of New Jersey.

§1983 only when the entity itself is a 'moving force' behind the deprivation; thus in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Therefore, to the extent that Plaintiff brings his action against Defendants Baker and Szczerba in their official capacities, Plaintiff fails to establish municipal liability pursuant to §1983.  (See Argument III A, *supra*).

IV.    **THE COURT MUST DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37 (B)(2) BECAUSE PLAINTIFF FAILED TO COMPLY WITH THE COURT'S ORDER COMPELLING DISCOVERY IN THIS MATTER.**

On February 16, 2005, Defendants propounded their First Set of Interrogatories and Request for Production of Documents to Plaintiff.  (D.I. 32, 33; A 11-26).  On March 21, 2005, Plaintiff filed a motion requesting additional time in which to respond to Defendants' discovery requests.  (D.I. 35).  The Defendants did not oppose Plaintiff's motion, and the Court granted Plaintiff's request for additional time, ordering that all discovery be completed by May 16, 2005.  (D.I. 36, 37).  On April 12, 2005 and May 4, 2005, counsel for Defendants contacted Plaintiff requesting a response to the outstanding discovery.  (A 30-31).  Receiving no response from Plaintiff, Defendants filed a Motion to Compel Discovery Pursuant to Fed. R. Civ. P. 37 (a) on May 16, 2005.  (D.I. 38; A-32).  On May 19, 2005, Defendants received Plaintiff's response to the request for production of documents.  (A-27).  However, Plaintiff failed to respond to Defendants' outstanding interrogatories.  Therefore, on September 13, 2005, the Court issued an Order granting Defendants' Motion to Compel and ordering Plaintiff to respond to Defendants' outstanding discovery.  (D.I. 42; A 28).  The Court further ordered that all discovery was to be completed by January 15, 2006.  As a result of the Court's Order, counsel for Defendants sent to Plaintiff a letter dated September 19, 2005 enclosing another  copy

-27-

of the outstanding discovery and requesting a response by October 21, 2005.  (A 33).  However, Plaintiff failed to respond.  On January 13, 2006, counsel for Defendants again sent a letter to Plaintiff requesting that he respond to the interrogatories immediately in light of the pending discovery deadline. (A 34).  Plaintiff again failed to respond.

Under Fed. R. Civ. P. 37, the Court may impose sanctions on a party who fails to comply with an order compelling discovery.  Fed. R. Civ. P. 37(b)(2) states in relevant part:

> If a party fails to obey an order "to provide or permit discovery, including an order made under subdivision (a) of this rule... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> (A)    An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B)    An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
> (C)    An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
> (D)    In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination...

In the present matter, Defendants respectfully request that the Court dismiss Plaintiff's Complaint on the basis of his repeated failure to respond to Defendants' discovery requests.  When contemplating the sanction of dismissal, the Third Circuit Court of Appeals states that the Court must consider several factors in its analysis:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entail an analysis of alternative sanctions; and (6) meritoriousness of the claim or defense. Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984).

-28-

Further, the Court is not required to find every factor satisfied in a particular matter in order to warrant dismissal. Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988).

In the present matter, Plaintiff is not represented by counsel, and, as such, Plaintiff is solely responsible for his failure to answer the propounded interrogatories. The record clearly demonstrates a history of Plaintiff's failure to respond to discovery despite the Court's Order compelling Plaintiff's responses and Defendants' repeated requests for his answers to the interrogatories. Such conduct can only constitute a willful disregard of the Court's Order and bad faith on the part of Plaintiff. Additionally, if the Court fails to grant Defendants' Motion for Summary Judgment, Defendants have been prejudiced by Plaintiff's failure to respond to discovery because they have been unable to ascertain and explore the validity of any evidence which Plaintiff may bring forth to support his claim. Finally, dismissal of Plaintiff's complaint is appropriate because the Complaint is completely lacking in merit as demonstrated by Arguments I-III, *supra*.

If the Court declines to dismiss Plaintiff's Complaint as a result of his failure to obey the Court's Order compelling discovery, Defendants respectfully request that the Court disallow Plaintiff from supporting his claims and prohibit Plaintiff from introducing any matters outside his Complaint into evidence.

### V.     PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(M), THE COURT MUST DISMISS ALL CLAIMS AGAINST DEFENDANT MYERS BECAUSE PLAINTIFF HAS FAILED TO SERVE DEFENDANT MYERS WITH THE SUMMONS AND COMPLAINT IN THIS MATTER.

Plaintiff filed the Complaint in this matter on March 2, 2004. (D.I. 2). On or about June 29, 2004, the Court issued the U.S. Marshal 285 forms for each Defendant requesting that personal service be waived. (D.I. 11). The waiver of service form was executed and returned for Defendants Leary, the City of Wilmington, the Wilmington Police Department, Mayor Baker and Chief

Szczerba.  (D.I. 13, 14, 17, 18, 19).  Due to the lack of specific information provided by Plaintiff, the Court was unable to serve Defendant "Unknown Sergeant."  (D.I. 12).  Service was declined as to Defendant Myers due to the fact that he was no longer employed by the City of Wilmington, and Plaintiff was suing Defendant Myers in his individual capacity.  (D.I. 15, 16).  As a result, Plaintiff was required by Rule 4(m) to serve Defendant Myers personally with a copy of the summons and Complaint within 120 days of filing the Complaint.  To this day, Plaintiff has failed to serve Defendant Myers.  Given that Plaintiff has failed to effect proper service of process on Defendant Myers, Defendant Myers respectfully moves the Court to dismiss all claims against him.

Fed. R. Civ. P. 4(m) states:

> Time Limit for Service.  If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.  This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

In implementing this Rule, the Third Circuit Court of Appeals has taken a strict approach, "consistently upholding dismissals of actions where there has not been meticulous effort to comply with its service provisions."  In re City of Philadelphia Litigation, 123 F.R.D. 515, 518 (E.D. Pa. 1988), citing Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080, 1088 n.4 (3d Cir. 1988); Braxton v. U.S., 817 F.2d 238 (3d Cir. 1987); Stranahan Gear Co., Inc. v. NL Industries, Inc., 800 F.2d 53, 56 (3d Cir. 1986).

In this matter, Plaintiff cannot show good cause why he has not properly served Defendant Myers with a copy of the summons and Complaint.  Two years have lapsed from the time Plaintiff

filed his Complaint.  During that time, it does not appear from the record that Plaintiff has undertaken any efforts to serve Defendant Myers.  Green v. Humphrey Elevator and Truck Co., 816 F.2d 877, 880 (3d Cir. 1987)(held that the "good cause" provision must be narrowly construed as protecting only those "diligent plaintiffs who through making every effort to comply with the dictates of the rule, nonetheless exceed the 120-day limit for service").  As such, the Court must dismiss all claims against Defendant Myers.

<u>**CONCLUSION**</u>

WHEREFORE, in light of the foregoing, Plaintiff is unable to maintain a claim under 42 U.S.C. §1983 for a violation of his Constitutional rights. Therefore, the Court must grant summary judgment in favor of Defendants and dismiss Plaintiff's Complaint with prejudice.

/s/ RosamariaTassone
Rosamaria Tassone, Esquire (I.D. #3546)
Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendants, City of Wilmington, Mayor James Baker, Police Department of Wilmington, Chief Michael Szczerba, and Officer Joseph Leary.

-32-