IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KNOWLINGTON O. BURBAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 04-133-SLR |
| ) | |
| CITY OF WILMINGTON, MAYOR ) | |
| JAMES BAKER, POLICE DEPARTMENT ) | |
| OF WILMINGTON, ) | |
| CHIEF MICHAEL SZCZERBA, ) | |
| UNKNOWN SERGEANT, OFFICER JOSEPH ) | |
| LEARY, OFFICER JAMES MYERS ) | |
| ) | |
| Defendants. ) | |
| ) | |

Knowlington O. Burbage, Fairton, New Jersey. Pro Se.

Rosamaria Tassone, Esquire, Assistant City Solicitor, Wilmington, Delaware. Attorney for Defendants City of Wilmington, Mayor James Baker, Police Department of Wilmington, Chief Michael Szczerba, and Officer Joseph Leary

**MEMORANDUM OPINION**

November 8, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Plaintiff is a pro se litigant who filed this action on March 2, 2004 against defendants. Plaintiff requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. (D.I. 1) The court granted plaintiff's motion on March 15, 2004. Plaintiff alleges violations of the Fourth, Eighth and Fourteenth Amendments under the U.S. Constitution as a result of the circumstances of his arrest.

Currently before the court is a motion for summary judgment filed on behalf of defendants City of Wilmington, Mayor James Baker, Wilmington Police Department, Chief of Police Michael Szczerba, and Officer Joseph Leary. A motion to dismiss was filed on behalf of Officer James Myers.[1] The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, the motion for summary judgment and the motion to dismiss will be granted.

## II. BACKGROUND

On June 21, 2002 plaintiff was arrested by Myers and Leary at the Cumberland Farms store located on Miller Road. (D.I. 2 at 4) The officers were in contact with a confidential informant they had arrested previously for drug-related offenses. (D.I. 49 at 3) The police report indicates that the confidential

---

[1] At the time the complaint was filed, Officer Myers was no longer an employee of the City of Wilmington.

informant had proven reliable in the past. (D.I. 49 at 2: "pas[t] proven reliable confidential informant")

The confidential informant told Myers and Leary that plaintiff was his supplier of crack cocaine and that on the day in question, plaintiff would arrive at the Cumberland Farms store located on Miller Road sometime between 10:30 and 11:30 a.m. (D.I. 48 at 4-5) The informant told Myers and Leary that the purpose of this visit was to deliver a quarter ounce of crack cocaine to an unknown party. (Id.) The informant also gave a description of plaintiff's vehicle. (Id.)

As a result of the information obtained, Myers and Leary contacted fellow officers Chorlton and Curry, who were both employed in the Drug, Organized Crime and Vice Unit to assist in establishing an "operation in order to apprehend Plaintiff." (Id.) The officers arrived at the location at the time indicated by the informant. (D.I. 48 at 5) The informant was also in the parking lot and had a cellular telephone to identify plaintiff. (Id.)

Plaintiff arrived at the location sometime between 11:00 and 11:30 a.m. (D.I. 48; D.I. 2) Plaintiff was driving the vehicle the informant had predicted. (D.I. 48 at 5). At this point, Leary and Myers approached plaintiff. (D.I. 2 at 4; D.I. 49 at 3)

Plaintiff maintains that the officers "sprang upon" him with

2

weapons drawn and pointed at his head. (D.I. 2 at 4) Next, Myers "forcefully pat [sic] frisk [sic] plaintiff." (D.I. 2 at 5). Plaintiff maintains Myers found nothing initially and had a "frustrated look on his face." (D.I. 2 at 5) According to plaintiff, members of the public were leaving the store and viewing the scene. (Id.) Next, Myers grabbed plaintiff's pants near the waist. (Id.) During this interaction, plaintiff claims that Myers "forcefully squeezed plaintiff's testicles." (Id. at 6) Throughout the events, plaintiff maintains an unidentified supervisor was observing the actions of Myers and Leary. (Id. at 5) The record does not identify any of those witnesses who were present at Cumberland Farms on the day in question or the supervisor.

Defendants acknowledge there was a frisk done for officer safety. (D.I. 48 at 5) They state the contraband found on plaintiff was immediately apparent to Officer Myers as a bulge near plaintiff's groin. (Id.) According to the defendants, that contraband was located where the informant indicated it would be. (Id.) Defendants maintain that upon feeling the bulge, Myers "reached his hand inside Plaintiff's waistband and quickly pulled his hand out." (Id.)[2]

---

[2]Attached to defendants' motion is the affidavit of Officer Leary, who observed Officer Myers "quickly pull his hand out" and that the contraband was immediately retrieved. (D.I. 49 at 5) Also attached to the motion is the affidavit of Officer Robert B. Curry, who did not witness Officer Myers place his hand inside

3

Plaintiff filed this cause of action on March 2, 2004.[3] (D.I. 2) Defendants sent discovery requests to plaintiff on February 16, 2005. (D.I. 32, 33) Plaintiff filed a motion for additional time which was unopposed and granted by the court. (D.I. 35) Plaintiff did not respond by the new deadline of May 16, 2005. Defendants filed a motion to compel. (D.I. 38) The motion was granted. (D.I 42) Discovery was to be completed by January 15, 2006. (Id.) To date, plaintiff has not filed a response to defendant's discovery request.

Defendant Myers has not been served the complaint in this matter. (D.I. 15) Notice to that effect was given to plaintiff. (D.I. 25) Plaintiff also has not responded to the pending motion for summary judgment.

### III. STANDARD OF REVIEW

A party is entitled to summary judgment only when the court concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving

---

plaintiff's pants but indicates the "pat down of plaintiff was completed in a matter of seconds." (Id. at 9) Officer Myers was no longer an employee of the City of Wilmington at the time of the complaint. (D.I. 48 at 4)

[3] Plaintiff maintains the criminal charges against him were dismissed because his Fourth Amendment rights were violated during the arrest. (D.I. 2 at 7) Officer Leary maintains that the State Attorney General's Office declined prosecution because plaintiff was being charged federally and that this offense may have been absorbed into that case. (D.I. 48 at 6)

that no material issue of fact is in dispute.  See Matsushita Elec. Indus.Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Id. at 587 (quoting Fed. R. Civ. P. 56(e)).  "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."  Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 302 (3d Cir. 1995).

If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The mere existence of some evidence in support of the party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The court, however, must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  Pennsylvania Coal Ass'n v.

Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Pacitti v. Macy's, 193 F.3d 766, 772 (3d Cir. 1999).

## IV.   ANALYSIS

### A.   Defendants City of Wilmington, Wilmington Police Department, Police Chief Michael Szczerba, and Mayor James Baker

It is an established principle that, as a basis for liability under 42 U.S.C. § 1983, the doctrine of respondeat superior is not acceptable. Monell v. Dept. of Social Servs., 436 U.S. 658 (1978). See also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Heine v. Receiving Area Pers., 711 F. Supp. 178, 185 (D. Del. 1989). Municipal liability under 42 U.S.C. § 1983 can be premised upon a government custom or official policy. Monell 436 U.S. at 690-1. Personal involvement by a defendant is essential in a civil rights action.[4] See Rode, 845 F.2d at 1207. "To demonstrate liability, a minimum of personal, actual knowledge is usually necessary." Servino v. Med. Ctr., No. 94C-08-077-WTQ, 1997 Del. Super. LEXIS 18 (Del. Super. Ct. Feb. 11, 1997) at *13 (citing Rode, 845 F.2d at 1208).

Beyond a bald assertion, plaintiff has failed to put forth any evidence regarding an official policy or custom on behalf of the City of Wilmington or the Wilmington Police Department which

---

[2]"Allegations of personal direction or of actual knowledge and acquiescence" are adequate to demonstrate personal involvement. Rode, 845 F.2d at 1207. Such allegations are required to be "made with appropriate particularity." Id.

6

caused a deprivation of his constitutional rights. Accordingly, the claims against defendants City of Wilmington and Wilmington Police Department are dismissed.

With regard to defendants Chief of Police Michael Szczerba and Mayor James Baker, plaintiff fails to allege with the required particularity that these defendants had knowledge of and acquiesced in a plan or action that deprived plaintiff of his constitutional rights. In <u>Atkinson v. Taylor</u>, the plaintiff sent letters and made verbal complaints to the supervisory defendants prior to filing a complaint; therefore, those parties were not dismissed on summary judgment. 316 F.3d 257 (3d Cir. 2003). In contrast, plaintiff in the present matter does not allege that Baker and Szczerba knew that officers were investigating him for drug sales or that they knew of and acquiesced in the manner in which the officers on the scene searched him. Consequently, the claims against these defendants are dismissed.

**B.   Claims Against Police Officers Myers and Leary**

As an initial matter, Officer Myers has not been served by plaintiff under Fed. R. Civ. P. 4. Plaintiff has not responded to the pending motions, and has provided no good cause for his failure to serve Officer Myers. Based upon those facts and the analysis below, the motion to dismiss filed on behalf of Officer Myers will be granted. Plaintiff alleges the conduct of the officers at the scene of his arrest violated his Fourth, Eighth,

7

and Fourteenth Amendment rights. The court will address each in turn.

### 1. The Stop

The Fourth Amendment governs searches and seizures and is made applicable to the states through the Fourteenth Amendment Mapp v. Ohio, 367 U.S. 643 (1961). When assessing whether a tip provided by a confidential informant is sufficient to establish probable cause under the Fourth Amendment, courts are to assess the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230 (1983). Under this test, the informant's veracity, reliability, and basis of knowledge are to be considered. Id. at 239. The factors articulated in Gates also apply in determining reasonable suspicion but a lesser showing is permissible. See Alabama v. White, 496 U.S. 110 (1990); Terry v. Ohio, 392 U.S. 1 (1968). In making a Terry stop, an officer must point to specific facts which arise to more than a mere hunch. Terry, 392 U.S. at 27. The experience of the police officers is a relevant consideration in determining reasonable suspicion. U.S. v. Carter, 1999 WL 1007044; U.S. v. Brown, 448 F.3d 239 (2006). "A tip given face to face is more reliable than an anonymous phone call." U.S. v. Valentine, 232 F.3d 350, 354 (3d Cir. 2000).

The police officers at bar had reasonable suspicion to approach and investigate plaintiff. The officers were working based on information provided to them from an informant who had

proven reliable in the past. The informant's basis of knowledge was his prior drug transactions with plaintiff. The information provided by the informant proved reliable as plaintiff did indeed show up at the predicted time and place. Also notable is that Officers Myers and Leary collaborated with senior officers who had experience in the Drug, Organized Crime and Vice Unit before beginning their investigation. Those officers were present during the investigation, frisk and arrest of plaintiff.

### 2. The Frisk

Having determined that the officers had reasonable suspicion to stop plaintiff, the next question is whether a Fourth Amendment violation occurred during the frisk. Plaintiff's complaint can be construed to name three violations at this stage; the officers did not frisk him for safety, that the plain feel doctrine was not satisfied, and that excessive force was used to effect the search.

#### a. Officer Safety

Terry recognized that in order to continue the investigation without fear of violence, a police officer may conduct a pat down or frisk of the individual. 392 U.S. at 24. This is a limited exception to the warrant requirement. Sibron v. New York, 392 U.S. 40 (1968).

The information available to the officers at the time of the frisk was that plaintiff was about to engage in a drug

9

transaction. According to plaintiff, there was members of the public present at the location. It is reasonable for the investigating officers to frisk plaintiff, given the nature of the anticipated offense and the presence of members of the public who could be injured or harmed during the course of the investigation. Therefore, the frisk was valid for the safety of both the officers and the members of the public in the immediate area.

### b.   Plain Feel

While conducting a frisk, an officer is not required to ignore contraband that is found. Michigan v. Long, 463 U.S. 1032, 1049 (1983). "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy. . ." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).

Plaintiff alleges that Myers frisked him but found nothing and immediately thereafter grabbed the waist of plaintiff's pants and pulled out the narcotics. Accepting this version of the facts as true, it is consistent with the plain feel doctrine. Under the doctrine, if a police officer conducts the frisk and immediately realizes that an item felt is contraband, then the officer can seize the contraband without violating the individual's rights; he need not ignore what he has found.

10

Plaintiff's own version of events is constitutional, and it is supported by the affidavit of Officer Leary, who observed the frisk of plaintiff.[5]  (D.I. 49 at 5)

### c.  Excessive Force

The Fourth Amendment and its "reasonableness" standard should be used to analyze all claims which allege that law enforcement officers have used excessive force in the course of an arrest of a free citizen.  Graham v. Connor, 490 U.S. 386, 395 (1989).  The reasonableness test requires careful analysis of the "facts and circumstances of each particular case, including . . . whether the suspect poses an immediate threat to officer safety and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).  The reasonableness of force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  The question to be answered is "whether the officers' actions were 'objectively reasonable' in light of the specific facts and circumstances confronting them [at that particular moment, regardless] of their

---

[5] ". . . I observed Officer Myers conduct a quick pat down of Plaintiff's exterior clothing.  Officer Myers indicated that he felt a large bulge in the groin area of Plaintiff's pants.  I observed Officer Myers pull the waistband of Plaintiff's pants from the front of his body, reach his hand inside Plaintiff's waistband and quickly pull his hand out."  (D.I. 49 at 5)

underlying intent or motivation." Id. at 397 (citing Scott v. United States, 436 U.S. 128, 137-139 (1978)); see also Terry, 392 U.S. at 21.

Plaintiff maintains that his genitals were squeezed by Myers when the contraband was removed from his pants. He also maintains that members of the public were observing the search from inside the Cumberland Farms. Other than plaintiff's bald assertions, the record is void of any other facts supporting this allegation. In fact, plaintiff has failed to name or present any of the individuals he claims observed the actions of Myers. Additionally, there is no medical report documenting physical injury upon plaintiff's arrest.

Officer Leary maintains the entire pat down was complete in seconds and that plaintiff made no complaint during the search or subsequently while in custody. This is supported by the affidavit of Officer Curry who indicated the search was conducted in a professional manner. There is insufficient evidence for a reasonable jury to find that excessive force was used by the officers.

### 3. Qualified Immunity of Police Officers Myers' and Leary

The burden of establishing entitlement to qualified immunity rests with the defendant official. Ryan v. Burlington County, 889 F.2d 1286, 1292 (3d Cir. 1989). Government officials

12

performing their discretionary functions are generally immune from liability for civil damages, provided that their conduct does not violate "clearly established statutory or Constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); In re City of Philadelphia Litig., 49 F.3d 945, 961 (3d Cir. 1995). A right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates the law." Hynson v. City of Chester Legal Dep't, 864 F.2d 1026, 1031 (3d Cir. 1988); see generally Anderson v. Creighton, 483 U.S. 635, 641 (1987). Thus, the qualified immunity defense rests upon the objective reasonableness of the official's action in light of clearly established law and the information possessed by the official at the time of the violation. Id. at 641.

The Third Circuit has determined, with respect to the "sufficiently clear" standard, that an official action will not be protected by qualified immunity not only if "the very action in question has previously been held unlawful," but also if, "in light of preexisting law the unlawfulness" of the action was "apparent." See Good v. Dauphin County Soc. Servs. for Children & Youth, 891 F.2d 1087 (3d Cir. 1989). Thus, previous precedent directly on point is not needed to demonstrate that the law is clearly established and immunity should be denied.

13

The officers at bar could reasonably believe that the frisk and subsequent recovery of contraband from plaintiff's pants was permissible. The rationale behind allowing a frisk is reasonable in itself, in order to minimize the risk of injury during an investigation. Similarly, the plain feel doctrine is applicable; if contraband is immediately apparent during the frisk, then it need not be ignored. In the performance of their duties, the police officers could have reasonably believed that their conduct did not violate the rights of plaintiff. Objectively, the officers had a basis of information upon which they acted from a informant who had proven reliable in the past. They sought assistance from more experienced officers to conduct their investigation. The investigation was conducted in view of the public, creating a concern for safety. The narcotics felt by Myers during the frisk were in the exact location predicted by the informant. Therefore, the claims against Myers and Leary in their personal capacity are dismissed.

## V.   CONCLUSION

For the reasons stated, defendants' motion for summary judgment and the motion to dismiss filed on behalf of Officer James Myers are granted. An order shall issue.